IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLIED WORLD NATIONAL ASSURANCE COMPANY, ) ) ) ) | |
| Plaintiff, ) | No. 14 C 8343 |
| v. ) ) | Judge Virginia M. Kendall |
| CITY OF CHICAGO, ) ) | |
| Defendant. ) ) ) | |

# **MEMORANDUM OPINION AND ORDER**

On November 8, 2010, Carlo Kintanar died after being involved in a motorcycle accident in the 2600 block of South Damen Avenue in Chicago, Illinois. Jane Kintanar, Carlo's wife, sued the City of Chicago in the Circuit Court of Cook County, alleging that Carlo's accident resulted from a deteriorated roadway, improper placement of traffic signage, and a failure to warn of rough terrain. *See Kintanar v. City of Chicago*, No. 10 L 13029. The City seeks a defense in the Kintanar lawsuit furnished by Plaintiff Allied World National Assurance Company, an insurer, pointing to an insurance policy between Allied World and Highway Safety Corporation, the entity responsible for delivery and setup of traffic control devices. The City contends that it qualifies as an additional insured within the provisions of that policy. Allied World has so far denied the City's request for a defense. After the filing of the Kintanar lawsuit, Allied World instituted this action against the City, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that it owes neither a duty to defend nor indemnify the City in the underlying suit. (Dkt. No. 10.)

Allied World now moves for summary judgment on both counts of its complaint and seeks a determination that it owes no duty to defend the City as a matter of law and that, without a duty to defend, there can be no duty to indemnify. The City cross-moved for partial summary judgment, contending that Allied World must defend the City in the Kintanar lawsuit and that any determination on the duty to indemnify is premature. For the reasons that follow, the Court grants the City's motion for partial summary judgment (Dkt. Nos. 20, 21, & 22) and denies Allied World's motion for summary judgment (Dkt. Nos. 23, 24, & 25). The Court concludes that Allied World must defend the City in the Kintanar lawsuit pursuant to the insurance policy in play. The Court additionally dismisses Count II of Allied World's declaratory judgment action without prejudice.[1]

## BACKGROUND

As a threshold matter, the Court notes that both parties failed to comply with Northern District of Illinois Local Rule 56.1, intermittently, when responding to the other's factual statements. Local Rule 56.1(b)(3)(B) requires parties to file responses to "each numbered paragraph in the [opposing] party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (quoting L.R. 56.1(b)(3)(B)). The Court may disregard statements and responses that do not properly cite to the record, *see Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809-10 (7th Cir. 2005),

---

[1] The Court denies Allied World's motion with respect to indemnification because its argument rests solely on a finding that there is no duty to defend. Moreover, because the Kintanar lawsuit is ongoing and no liability on behalf of the City has been established yet, the Court expresses no opinion on whether Allied World must indemnify the City in the result of a finding of liability and dismisses Count II of Allied World's complaint without prejudice. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("decisions about indemnity should be postponed until the underlying liability has been established"); *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("district court was correct to dismiss without prejudice the declaratory judgment action insofar as it sought a determination of the company's duty to indemnify Zavalis"); *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) ("[T]he duty to indemnify is unripe until the insured has been held liable.").

and disputes are not adequately created "by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Both parties are guilty of evasive, overarching denials of some of the other's statements of fact without proper evidentiary support. The Court therefore deems admitted those facts which are disputed but unsupported. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648-49 (7th Cir. 2014) ("it is within the district court's discretion to strictly enforce local rules regarding summary judgment").

Additionally, Allied World objects to a number of the City's statements of fact regarding the setup of the traffic control devices pertinent to the underlying action, arguing that they are inadmissible because they are supported by the testimony of individuals who were not present at the work site the day of the setup. The Court summarily rejects this group of objections. Although testimony and affidavits must be based on personal knowledge to be admissible, *see Ledbetter v. Good Samaritan Ministries*, 777 F.3d 955, 957 (7th Cir. 2015), Federal Rule of Evidence 406 provides that "[e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice." An individual may therefore have personal knowledge of a situation without offering eyewitness testimony. Accordingly, the evidence on which the City bases a number of its most integral statements of fact is admissible and Allied World's general objection is more properly classified as one of weight and credibility than admissibility.

The following facts are undisputed unless expressly noted.

### A. The Contract Between the City and Highway Safety

On February 1, 2004, the City and Highway Safety entered into a contract for the "Rental and Placement of Traffic Control Devices" ("the Contract"), requiring Highway Safety to

provide signs, barricades, and traffic arrow boards at the City's request. (Def. 56.1 St. ¶ 8; Traffic Control Contract.) The City and Highway Safety continually extended the term of the Contract until July 31, 2010, at which point the parties continued a working relationship in the absence of the Contract. (Def. 56.1 St. ¶¶ 9-11.) The Contract required Highway Safety to "furnish, deliver, place and pick up, . . . various Traffic Control Devices on a rental basis, all in accordance with the terms and conditions" of the contract. (Pl. 56.1 St. ¶ 29.) The Contract additionally required Highway Safety to maintain a liability insurance policy naming the City as an additional insured for "liability arising directly or indirectly from the work" of Highway Safety. (Pl. 56.1 St. ¶ 30; Def. 56.1 St. ¶ 13.) Highway Safety was obligated to provide a training program to its employees on safety and worksite hazards associated with the traffic control devices. (Def. 56.1 St. ¶ 12.)

The Contract required Highway Safety to "furnish, deliver, place and pick-up" traffic control devices on a rental basis. (Def. 56.1 St. ¶ 15.) Regarding equipment placement and reconfiguration, the Contract mandated that Highway Safety be available at any time to place or reset any traffic control device on a City street. (Traffic Control Contract at 52-53.) The Contract additionally required Highway Safety to personally superintend any work done at any site. (Def. Stmt. of Add'l Facts ¶ 3.)

B.     **Arrangement of Traffic Control Devices and Signs**

On November 1, 2010, the City began a water management project near 2608 South Damen Avenue in Chicago, Illinois. (Pl. 56.1 St. ¶ 11.) The portion of Damen Avenue near the City's worksite is a two-way street with two lanes each going North and South. (Pl. 56.1 St. ¶ 6.) To protect the City's workers on Damen Avenue, Terrence Sanchez, a City employee in the Department of Water Management, ordered Highway Safety to provide traffic control devices

4

for placement near the worksite. (Pl. 56.1 St. ¶ 31; Def. 56.1 St ¶¶ 25-26, 32.) Sanchez had no training or experience on traffic safety. (Def. 56.1 St. ¶ 31.) The City requested two directional arrow boards, 25 lighted barricades, and four signs, two of which were left to Highway Safety's discretion. (Pl. 56.1 St. ¶ 32; Def. 56.1 Resp. ¶¶ 32, 35.) These items were commonly used for lane closures. (Def. 56.1 St. ¶ 36.) Collectively, these traffic control devices were placed north of 2608 South Damen in an effort to redirect traffic around the City's project. (Pl. 56.1 St. ¶¶ 12-13.) There were no traffic control devices at the precise point of the ensuing accident. (Pl. 56.1 St. ¶ 14.)

Sanchez testified that he made requests for traffic control devices for particular locations on City streets and that part of the request pertained to the size of the area needed for construction. (Def. 56.1 St. ¶¶ 28-29.) Allied World suggests that the City retained ultimate control over the selection and placement of the traffic control devices, but Sanchez testified that the extent of the City's instruction to Highway Safety involved telling Highway Safety where the City's team was working and how much room it needed. (Pl. 56.1 St. ¶¶ 33-34; Def. 56.1 St. ¶ 34; Def. Stmt. of Add'l Facts ¶ 2; Sanchez Dep. at 16.) Of course, if a City employee did not approve of Highway Safety's placement of the devices, he or she could tell Highway Safety to reconfigure the setup. (Pl. 56.1 St. ¶¶ 35-37; Dkt. No. 21 Ex. C-1, Traffic Control Contract at 53.) The order forms permitted Highway Safety to deliver and place traffic control devices without consulting a City employee. (Def. 56.1 St. ¶ 33; Dkt. No. 21, Ex. 10.)

Michael Calderone, an Assistant District Superintendent for the City, testified that he never ordered either a specific amount or type of traffic control device for any project. (Def. 56.1 St. ¶¶ 37, 41.) Calderone stated that the City's water management unit does not set up traffic control devices, does not instruct Highway Safety how or where to set them up, and does not

interact with Highway Safety while it places the devices. (Def. 56.1 St. ¶¶ 42-44; Calderone Dep. at 90-91.) Similarly, Claude Driver, a water repair employee for the City, testified that contractors generally erect the sawhorses and that the City did not erect the arrow boards near the site of the accident. (Def. 56.1 St. ¶¶ 48-49, 51.)

### C. The Underlying Wrongful Death Lawsuit

Carlo Kintanar was driving his motorcycle southbound on Damen Avenue on November 8, 2010. (Pl. 56.1 St. ¶ 7.) Neither the City nor Highway Safety had yet removed the traffic control devices near the City's water management construction. While driving south, Carlo allegedly came into contact with a rough, deteriorated portion of road. (Pl. 56.1 St. ¶ 8.) Carlo fell off his motorcycle and was struck by another vehicle traveling south. (Pl. 56.1 St. ¶ 9.) Carlo died later that day from the injuries he sustained from the accident. (Pl. 56.1 St. ¶¶ 5, 10.)

On November 16, 2010, Jane Kintanar, Carlo's wife, filed a lawsuit against the City stemming from the accident.[2] (Pl. 56.1 St. ¶ 15; Def. 56.1 St. ¶ 19.) The Kintanar lawsuit's main allegations include assertions that (1) the City had a duty to inspect and maintain the roadway; (2) the City "allowed and permitted unreasonably dangerous depressions, potholes and other hazardous road defects to exist in the roadway"; (3) the City failed to "barricade, block off, cordon off, or otherwise segregate" the hazardous conditions from traffic; (4) "the signage and construction barricades selected and placed by the City of Chicago failed to warn motorists" of the road's defects; and (5) Highway Safety provided the City with traffic control devices for use near 2608 South Damen Avenue. (Pl. 56.1 St. ¶¶ 16-20l Def. 56.1 St. ¶¶ 20-23.) Most pertinent to the current discussion, the Kintanar lawsuit alleges that the City, by and through its agents, failed to barricade certain rough terrain and erected barricades and other forms of partial lane closures that caused traffic to be channeled into a defective portion of the Damen roadway.

---

[2] Jane amended her complaint three times, most recently on November 14, 2014. (Def. 56.1 St. ¶ 19.)

(Def. 56.1 St. ¶ 24.) Jane did not name Highway Safety as a defendant in the Kintanar lawsuit. (Pl. 56.1 St. ¶ 21.)

Jane retained Joseph A. Filippino as a controlled expert witness in her lawsuit against the City. (Def. 56.1 St. ¶ 54.) Filippino, a professional engineer experienced in roadway maintenance, believes that traffic at the site of the accident was expressly directed over a hazardous roadway surface. (Def. 56.1 St. ¶¶ 55-56.) Filippino stated that the placement of signage and barricades near the accident site violated City regulations by channeling two lanes of traffic into one directly over a deteriorated portion of roadway. (Def. 56.1 St. ¶ 57.)

### D. The Insurance Policy

Allied World issued Highway Safety a commercial general liability policy (Policy No. C013084/001; "the Policy") from November 30, 2009 to November 30, 2010. (Pl. 56.1 St. ¶ 24; Def. 56.1 St. ¶ 5.) The Policy provided coverage to Highway Safety for sums Highway Safety became legally obligated to pay as damages from "bodily injury" or "property damage." (Def. 56.1 St. ¶ 6.) Highway Safety was the primary insured under the Policy, but the Policy also included an additional ensured endorsement that created potential coverage for entities Highway Safety became associated with. (Pl. 56.1 St. ¶¶ 25-26.) Specifically, the additional insured endorsement attached to the Policy stated:

> **Who Is An Insured** is amended to include any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations or premises owned by you or rented to you.

(Pl. 56.1 St. ¶ 27; Dkt. No. 25-2, Policy at 52.) The City sought defense and indemnity from Allied World as an additional insured after the institution of the Kintanar lawsuit. (Pl. 56.1 St. ¶ 28.)

## **LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Common Cause Ind. v. Individual Members of the Ind. Election Comm'n*, 800 F.3d 913, 916 (7th Cir. 2015). Consistent with any summary judgment motion, the Court "construe[s] all facts and draw[s] all reasonable inferences in favor of the non-moving party" when reviewing cross-motions for summary judgment. *See Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 746 (7th Cir. 2015). To survive summary judgment, the nonmovant must demonstrate that there is a genuine issue of material fact for trial "such that a reasonable jury could return a verdict in her favor." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013). "Evidence supporting or opposing summary judgment must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552, 555 (7th Cir. 2014). A factual dispute does not defeat summary judgment if the dispute does not involve a material fact and "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Burton v. Downey*, No. 14-3591, 2015 WL 5894126, at *5 (7th Cir. Oct. 8, 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

**DISCUSSION**

The City seeks a conclusion that Allied World owes it a duty to defend in the underlying Kintanar lawsuit, while Allied World requests a declaration that it owes neither a duty to defend nor indemnify the City. Allied World's argument regarding indemnification rests entirely on a finding that it need not defend the City. *See Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (the duty to defend is broader than the duty to indemnify under Illinois law). The current dispute is therefore singular: the Court must determine whether Allied World must defend the City in the Kintanar lawsuit. If it does, the City is entitled to partial summary judgment. If it does not, Allied World would receive summary judgment in its favor. For the reasons that follow, the Court concludes that no genuine dispute of material fact exists with respect to the duty to defend and grants the City's motion for partial summary judgment.

As an initial matter, the Court applies Illinois substantive law. Neither Allied World nor the City argues that the choice of law rules of Illinois require the Court to apply the substantive law of any other state. *See Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 n.1 (7th Cir. 2012) (courts "do not worry about conflict of laws unless the parties disagree on which state's law applies"). When neither party raises a conflict of law issue in a diversity case, the Court applies the law of the state in which it sits. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013) (citation omitted). Under Illinois law, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *Twenhafel v. State Auto Prop. and Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009) (internal quotation marks and citation omitted).

This case revolves around the answer to one ultimate question: whether, under the undisputed facts, the City qualified as an additional insured under the Policy such that Allied

World must defend it in the Kintanar lawsuit. Although an insurer's duty to defend is "broader than its duty to indemnify, . . . it is not unlimited." *See Amerisure*, 622 F.3d at 810 (citing *Am. Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 497 (Ill. App. Ct. 2006)). To determine the scope of the duty to defend applicable to an insurance policy, courts compare the "factual allegations of the underlying complaint . . . to the language of the insurance policy." *Amerisure*, 622 F.3d at 810 (citing *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods*, 828 N.E.2d 1092, 1098 (Ill. 2005)). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010). In Illinois, an insurer may refuse to defend a putative insured party "only if it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *See Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 694 (7th Cir. 2009) (quoting *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006) (internal quotation marks omitted). In addition, Allied World must defend the City if it has knowledge of "true but unpleaded facts which when taken together with the allegations in the complaint indicate that the claim is potentially covered by the policy." *See Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 827-28 (7th Cir. 1992) (citation omitted); *Maryland Cas. Co. v. Dough Mgmt. Co.*, 36 N.E.3d 953, 961 (Ill. App. Ct. 2015). Any doubt or ambiguity is resolved in favor of the insured. *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010).

Despite the official extinguishing of the Contract on July 31, 2010, Allied World does not advance an argument that Highway Safety was under no obligation to provide the City with commercial general liability insurance at the time of the accident. The Court therefore does not

address the timing of the Contract. Without a dispute concerning the viability of the agreement between the City and Highway Safety or a dispute concerning whether the City qualifies as an additional insured under the language of the policy, the Court need only determine whether aspects of the Kintanar lawsuit potentially arise out of Highway Safety's operations. *See Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 722 (7th Cir. 2015) ("Because we cannot say that [the underlying complaint] is not potentially within the coverage of the Policy, we hold that [the insurer] had a duty to defend the plaintiffs in the underlying lawsuit.").

They do. In this context, the Kintanar lawsuit's operative complaint and the Policy must both be liberally construed in favor of finding coverage for the City. *See U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). Two of the Kintanar lawsuit's main allegations are that (1) the City failed to barricade or block off certain unsafe areas of Damen Avenue and (2) the City erected barricades and partially closed lanes that caused traffic to be channeled into deteriorated portions of roadway. (Def. 56.1 St. ¶ 24.) These allegations, taken in tandem with the City's uncontested evidence, supported by the testimony of three City employees, that Highway Safety employees, and not the City itself, would place and position the barricades at issue based on their safety training and knowledge, demonstrate that the liability in the Kintanar lawsuit at least potentially arises from Highway Safety's operations. *See Panfil*, 799 F.3d at 722 ("We emphasize that the bar to finding a duty to defend is low."). This conclusion is bolstered by the fact that the Contract itself states both that Highway Safety does the actual placement and rearrangement of the traffic control devices and that Highway Safety is obligated to "personally superintend" the placement of the devices. (Traffic Control Contract at 6, 52-53.)

Allied World's argument that it owes no duty to defend because Highway Safety was not named as a defendant in the Kintanar lawsuit is unavailing. The Court "may consider material

outside the complaint that sheds light on the coverage issue." *Penda Corp.*, 974 F.2d at 828; *see also U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 550 N.E.2d 1032, 1036-37 (Ill. App. Ct. 1989 ("To hold otherwise would allow the insurer to construct a formal fortress of the third party's pleadings and to retreat behind its walls, thereby successfully ignoring true but unpleaded facts within its knowledge that require it, under the insurance policy, to conduct the putative insureds' defense."). Accordingly, the Kintanar lawsuit's allegations that address the positioning and placement of traffic control devices, despite failing to claim that Highway Safety was the responsible party, coupled with the uncontested evidence provided by the City that Highway Safety is generally responsible for erecting the traffic control devices, brings the underlying lawsuit potentially within the purview of the Policy.

Nor is it beyond doubt that the Kintanar lawsuit hinges only on the fact that the City allegedly allowed Damen Avenue to deteriorate. Although the Kintanar lawsuit contends that Carlo was thrown from his motorcycle because of the condition of the road, it simultaneously maintains that he only traveled down that portion of roadway because of the barricades and arrow boards directing him to do so. Under Illinois law, there can be multiple causes contributing to a single injury and Allied World's contention that the unsafe road alone caused the accident does not remove the Kintanar lawsuit from the Policy's coverage. *See Levy v. Minn. Life Ins. Co.*, 517 F.3d 519, 524 (7th Cir. 2008) ("Illinois law defines proximate cause as any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.") (internal annotation marks, quotation marks, and citation omitted). Here, the accident would not have occurred in the location where it occurred were it not for the placement of the barricades, signs, and arrow

12

boards. Highway Safety's operations in setting up the traffic control devices were integral to the accident taking place and were not merely "condition[s] that had to exist for the event in question to occur." *See James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 386 (7th Cir. 2009) ("claim need not have been foreseeable to be deemed to arise from an act by the insured"). Accordingly, the record before the Court shows that collectively, both the condition of the road and Highway Safety's placement of the traffic control devices at the very least potentially caused the alleged injury. Because the Kintanar lawsuit potentially emanates from Highway Safety's operations, Allied World must defend the City in the underlying litigation.

Here, Allied World must defend the City "unless it is *clear* from the face of the underlying complaint that the allegations fail to state facts which bring the case even potentially within the policy's coverage." *See Panfil*, 799 F.3d at 719 (quoting *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008) (internal quotation marks and citation omitted). The Court is not presented with that limited scenario. The allegations in the underlying complaint, even when viewed in the light most favorable to Allied World, potentially trigger coverage under the policy. Combined with the undisputed facts[3] that Highway Safety physically sets up the signage and traffic control devices near City work sites, has discretion to leave the devices if no City employee is present, and ultimately must superintend the placement of any device, the liability under the Kintanar lawsuit potentially involves Highway Safety operations. Allied World must therefore defend the City as an additional insured under the Policy. The Court accordingly grants the City's motion for partial summary judgment and denies Allied World's motion for summary judgment.

---

[3] Again, the Court denies Allied World's blanket objection to City employees' testimony regarding the City's usual practice when working with Highway Safety. Whether or not Sanchez, Calderone, or Driver were present at the site of the underlying accident, they may competently testify to the City's general relationship with Highway Safety pursuant to Fed. R. Evid. 406. Allied World has offered no evidence demonstrating that the City strayed from its usual practice in this instance.

## CONCLUSION

For the reasons stated herein, the Court grants the City's motion for partial summary judgment (Dkt. Nos. 20, 21, & 22) and denies Allied World's motion for summary judgment (Dkt. Nos. 23, 24, & 25). The Court dismisses Allied World's duty to indemnification claim without prejudice.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 11/16/2015